Approved: _____
MEGAN GAFFNEY
Assistant United States Attorney

Before:  THE HONORABLE KEVIN NATHANIEL FOX
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - x

14 MAG 2797

UNITED STATES OF AMERICA          :   COMPLAINT

         - v. -                   :   Violations of
                                      21 U.S.C. § 846;
ROMAN KITROSER,                   :   18 U.S.C. §§ 924(c), 2
NATISHA APONTE,
JESSY CASTILLO, and               :   COUNTY OF OFFENSE:
RONEL PIERRE,                         NEW YORK
                                  :
         Defendants.
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

         ANTHONY SCOTTO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE

         1.   From in or about November 2014 through on or about December 12, 2014, in the Southern District of New York and elsewhere, ROMAN KITROSER, NATISHA APONTE, JESSY CASTILLO, and RONEL PIERRE, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

         2.   It was a part and an object of the conspiracy that ROMAN KITROSER, NATISHA APONTE, JESSY CASTILLO, and RONEL PIERRE, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

         3.   The controlled substances that ROMAN KITROSER, NATISHA APONTE, JESSY CASTILLO, and RONEL PIERRE, the defendants, conspired to distribute and possess with the intent to

distribute were (1) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(A); (2) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A); and (3) marijuana, in violation of 21 U.S.C. § 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

### COUNT TWO

4. In or about December 2014, in the Southern District of New York and elsewhere, ROMAN KITROSER and NATISHA APONTE, the defendants, and others known and unknown, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the offense charged in Count One, knowingly did use and carry firearms, and, in furtherance of such crime, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which firearms included a machinegun.

(Title 18, United States Code, Sections 924(c)(1)(A) & (B)(ii), and 2)

The bases for deponent's knowledge and for the foregoing charges are, in part, as follows:

5. I am a Special Agent with DEA, and I have been personally involved in the investigation of this matter. I have been a Special Agent with the DEA since 2001. During that time, I have received training in narcotics investigations and been involved in numerous such investigations.

6. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and reports of the investigation, criminal history records, and other records, and from my conversations with other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Since approximately 2012, the DEA has been investigating

ROMAN KITROSER, the defendant, for narcotics trafficking. I have been personally involved in the investigation. On approximately 20 different days between in or about November 2014 and in or about December 2014, I and other law enforcement agents have conducted surveillance of KITROSER, in particular, surveillance of KITROSER's activities in the vicinity of a residential building in Brooklyn (the "Brooklyn Residence") and a residential building in Manhattan (the "Manhattan Residence").

    8.    On or about November 20, 2014, I and other law enforcement agents conducted surveillance of ROMAN KITROSER, the defendant. During that surveillance, we observed, among other things, the following:

        a. KITROSER exited the Brooklyn Residence carrying a large cardboard box (the "Box"). KITROSER put the Box into the trunk of a truck (the "Truck").

        b. KITROSER drove to a package store in Brooklyn, New York (the "Mail Station"). KITROSER parked the Truck in front of the Mail Station. KITROSER then carried the Box into the Mail Station. KITROSER emerged shortly thereafter without the Box.

        c. Law enforcement agents thereafter entered the Mail Station and identified the Box. A certified narcotics detection canine inspected the Box and made a positive alert for the presence of narcotics.

    9.    On or about November 20, 2014, the Honorable Ronald L. Ellis, United States Magistrate Judge for the Southern District of New York, signed a search warrant for the Box. I and other law enforcement agents executed the search warrant and found, among other things, a speaker that contained a hidden compartment. Within the hidden compartment was approximately $300,000 in U.S. currency.

    10.   On or about December 8, 2014, I and other law enforcement agents conducted surveillance of the Brooklyn Residence. We observed, among other things, NATISHA APONTE, the defendant, entering the Brooklyn Residence carrying three brown cardboard boxes.

    11.   On or about December 10, 2014, I and other law enforcement agents conducted surveillance of ROMAN KITROSER, the defendant, in the vicinity of both the Brooklyn Residence and the Manhattan Residence, and reviewed security camera footage from the Manhattan Residence. From speaking with some of the law

3

enforcement agents and from my review of the security camera footage, I have learned, among other things, the following:

      a. KITROSER drove a car (the "Car") from the Brooklyn Residence to a package store in Manhattan (the "Package Store"). KITROSER picked up two large cardboard boxes from the Package Store, and put them in the Car.

      b. KITROSER drove the Car to the Manhattan Residence. KITROSER parked the Car in the parking garage for the Manhattan Residence.

      c. Directly behind KITROSER's Car as he entered the parking garage was a vehicle driven by JESSY CASTILLO, the defendant.

      d. KITROSER removed the two large cardboard boxes from the trunk of the Car. KITROSER placed the cardboard boxes on a dolly.

      e. CASTILLO removed a large cardboard box from his vehicle and placed that box on top of the two large cardboard boxes on the dolly.

      f. KITROSER and CASTILLO embraced.

    12. On or about December 11, 2014, law enforcement agents conducted surveillance of ROMAN KITROSER, the defendant, in the vicinity of the Brooklyn Residence. I have spoken with some of the agents, who told me, in substance and in part, the following:

      a. KITROSER entered the Brooklyn Residence.

      b. KITROSER emerged from the Brooklyn Residence carrying a book bag (the "Book Bag").

      c. KITROSER placed the Book Bag in the trunk of the Car.

      d. KITROSER drove the Car a short distance and pulled over. RONEL PIERRE, the defendant, approached the Car, carrying a black bag ("Bag-1").

      e. PIERRE got into the Car and handed KITROSER Bag-1.

      f. Law enforcement agents approached the Car and spoke with KITROSER and PIERRE. KITROSER stated, in substance and in part, that (1) the Car was not his and (2) the Book Bag and Bag-1 were not his. PIERRE stated, in substance and in part, that

4

(1) the Car was not his and (2) the Book Bag and Bag-1 were not his.

  g. After both KITROSER and PIERRE disclaimed ownership of Bag-1 and the Book Bag, law enforcement agents opened Bag-1 and discovered large bundles of U.S. currency. The law enforcement agents opened the Book Bag and discovered two brick-shaped packages containing what appeared to be cocaine, weighing approximately two kilograms.

  13. I and other law enforcement agents have spoken with an employee of Con Edison, who told us, in substance and in part, that a utility account exists for an apartment in the Brooklyn Residence (the "Brooklyn Apartment") in the name of NATISHA APONTE, the defendant.

  14. On or about December 11, 2014, following the events described in paragraph 12 above, law enforcement agents conducted surveillance of the Brooklyn Residence. Based on my conversations with some of those law enforcement agents, I have learned that they observed, among other things, the following:

  a. NATISHA APONTE, the defendant, exited the Brooklyn Residence.

  b. APONTE entered the Truck.

  c. APONTE drove the Truck to the same block where KITROSER and RONEL PIERRE, the defendant, had engaged in the above-described exchange described in paragraph 12 above earlier that day.

  d. APONTE exited the Truck and was approached by law enforcement agents.

  e. APONTE stated, in substance and in part, that (1) she was just shopping in the area; and (2) she was not from the area, but was from Las Vegas.

  f. The law enforcement agents asked APONTE if they could look in her bag. APONTE provided consent. Agents found, among other things, two large bundles of U.S. currency.

  15. On or about December 11, 2014, the Honorable Vera Scanlon, United States Magistrate Judge for the Eastern District of New York, signed a search warrant for the Brooklyn Apartment. I and other law enforcement agents executed the search warrant and found, among other things, the following:

      a. Nine firearms, including, what appear to be, based on my training and experience, three machineguns;

      b. Two silencers;

      c. High-ammunition magazines;

      d. Approximately eight kilogram-sized packages containing a white powdery substance that appears to be cocaine;

      e. Two brick-shaped packages containing a tan powdery substance that appears to be heroin, weighing approximately two kilograms;

      f. A large press used to form loose narcotics into kilogram-sized bricks, commonly referred to as a "kilo press";

      g. Large quantities of U.S. currency;

      h. Three money counters;

      i. Approximately 20 cellular phones;

      j. Identification cards, which display photographs that appear to depict ROMAN KITROSER, the defendant, but display different names;

      k. Papers bearing the name "Natisha Aponte," including U.S. mail;

      l. Women's clothing and shoes; and

      m. Prescription pill bottles bearing the name "Roman Kitroser."

     16. I and other law enforcement agents have observed ROMAN KITROSER, the defendant, driving a BMW that is registered to an individual not named as a defendant herein ("Individual-1"). Based on my review of law enforcement databases, I have learned that Individual-1 is the listed tenant for an apartment located in the Manhattan Residence (the "Manhattan Apartment").

     17. On or about December 12, 2014, the Honorable Gabriel W. Gorenstein, United States Magistrate Judge for the Southern District of New York, signed a search warrant for the Manhattan Apartment. I and other law enforcement agents executed the search

6

warrant and found, among other things, the following:

    a. Three speaker boxes, each containing seven kilograms of a white powdery substance that appeared to be cocaine, for a total of 21 kilograms. Field tests conducted on a sample of the substance confirmed the presence of cocaine.

    b. A bag containing what appears to be marijuana;

    c. Scales;

    d. A safe containing, among other things, approximately $55,000 in U.S. currency;

    e. A vacuum-sealed package containing over $100,000 in U.S. currency;

    f. Ledgers containing, among other things, tracking numbers for packages;

    g. A money counter;

    h. A prescription pill bottle bearing the name "Roman Kitroser";

    i. An autographed picture made out to "Roman Kitroser."

18. On or about December 12, 2014, I and other law enforcement agents were present at the Manhattan Apartment in connection with the execution of the above-referenced warrant. I have spoken with another law enforcement agent, who in turn spoke with a security attendant for the Manhattan Residence (the "Attendant"). Based on my conversation with that other agent, I have learned, among other things, the following:

    a. On or about December 11, 2014, after the law enforcement agents arrived at the Manhattan Residence and after ROMAN KITROSER and RONEL PIERRE, the defendants, had been arrested, the Attendant received a call from Individual-1, the listed tenant for the Manhattan Apartment. Individual-1 informed the Attendant that an individual named "Jessy" would be arriving to remove things from the Manhattan Apartment. Individual-1 told the Attendant, in substance and in part, that "Jessy" should be permitted to enter and, if "Jessy" were permitted to enter, Individual-1 would "take care of" the Attendant.

    b. JESSY CASTILLO, the defendant, subsequently arrived at

the Manhattan Apartment.

WHEREFORE, deponent respectfully requests that ROMAN KITROSER, NATISHA APONTE, JESSY CASTILLO, and RONEL PIERRE, the defendants, be imprisoned or bailed, as the case may be.

_____
ANTHONY SCOTTO
Special Agent
Drug Enforcement Administration

Sworn to before me this
12th day of December, 2014

_____
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK